Good morning, Your Honors, and may it please the Court. My name is Danielle Veranian, and I represent the appellants in this matter along with my co-counsel Gary Jones, Madison Mechanical, Inc., Madison Mechanical Contracting, LLC, Madison Mechanical OS Corp., Glenn Haslam, Gary Garofalo, Lawrence Kramer, Richard Lombardo, and Richard Arnold. Your Honors, we're here today on the appeal of an entry of summary judgment in favor of Twin City Fire Insurance Company. And as you well know, the standard of review on that appeal is de novo. The basis of Twin City's argument in its motion for summary judgment turns on the interpretation of a preposition or a prepositional phrase in the insurance policy at issue. The lower court erred in granting the summary judgment as there are numerous disputed, genuinely disputed material facts at play in this case. And accordingly, we're asking this court to reverse and remand that decision. This case arises out of Twin City's denial of coverage to defend the suit brought by Mr. Bob Butchkowski against the appellants as a result of his termination from a Madison entity. Mr. Butchkowski was both an employee and a shareholder of Madison Mechanical OS Corp. When during the summer of 2015, he was informed that a new entity would be formed, he would not be a part of it. And as a result of those events, we have a cascade of events in this case. There are several key documents. First, the November 11th letter, which is the cease and desist demand letter from Mr. Butchkowski's attorneys at that time. When you say November 11th, that's the 2015 letter? Yes, Your Honor. November 11th, 2015, the appellants received a cease and desist demand letter from Mr. Butchkowski's attorney at that time. They promptly reported that letter to their insurance, their long-term insurance broker. And then shortly thereafter, Mr. Butchkowski was terminated by a letter dated November 18th of 2015. Twin Cities' argument in this case asks this court to look at that November 11th, 2015 letter in a vacuum. The letter itself doesn't mention Mr. Butchkowski's termination because he hadn't been terminated at the time. But when you look at that letter in the context of everything that was happening at the time and what Mr. Butchkowski knew when that letter was sent, you can clearly see that he knew he was going to be terminated. He knew he was not going to be a part of the new company. Now, can I ask you just, you mentioned indemnifying. So my understanding, limited of insurance contracts, is in principle there are two different questions here, which is whether they had a duty to defend and whether they had a duty to indemnify. And as I read the cases, in theory, sometimes the answer to those could be yes and no or no and yes. But as I looked at your materials in this case, I don't see you as having made a separate argument. So your position, as I understand it, is there was a duty to indemnify and a duty to defend. Have you ever separately argued that even if there wasn't a duty to indemnify, there was a duty to defend? I didn't see that argument, but I wanted to give you a chance. We have not separately argued that, Your Honor. But, Your Honor, you're correct. The duty to defend is broader than the duty to indemnify. But you have not preserved the specific argument that even if there was not a duty to indemnify, there nonetheless was a duty to defend. We have not gotten to that because in the court below, the basis of the motion for summary judgment was that Twin City argued that coverage was not triggered at all. So there was no duty to indemnify or to defend. And the basis of that argument, I think what we have to look to is the timeline. So in any coverage litigation suit, there is a key document. And that key document is the coverage determination letter. In this case, we have two coverage determination letters. The first is from October 18th of 2016, in which Michael Knox, who is the claims representative on this case for Twin City, issued a letter stating that Twin City would provide a defense under a reservation of rights. Now, key in that letter is that Mr. Knox says multiple portions of the policy were triggered. Number one, the employment practices portion of the policy. So I certainly understand they sent these letters that said coverage. But, again, I want to just make sure of the argument. In principle, when I read that in your briefing, at first I wondered if you were making some sort of estoppel argument, which is that they told us they would, and then they took that back. And I could imagine in principle that would give rise to some sort of estoppel claim. They say they defend us, and then they didn't defend us. But when I read your briefing and then when I looked at your district court briefing, I didn't see you ever making any sort of estoppel argument, that regardless of whether they were required to say that in the first instance, they did say it, and basically no backseas. You have not made any sort of argument like that. Am I right? No. What we have said, Your Honor, we haven't put it in the terms of no backseas. Or estoppel. The legal term for that is estoppel. And I've never seen you make an argument. Again, the estoppel argument would be, look, maybe we're right, maybe we're wrong, but they said they would do this, and now they're not allowed to take that back. You've not preserved that as a separate legal argument, right? What we have preserved is the potentiality of coverage. And what we have argued in our papers is that standard under the potentiality of coverage. And what the case law says is that if there is a potentiality of coverage, it's covered. Right. And so you're using those letters as evidence of potentiality as a coverage, not a legal concession on their part that they're now foreclosed from. Correct. Okay. Correct. So, again, though, those two letters are key, and the first of which is the October 18th of 2016 letter. After that, and again, in that letter, it is indicated that the employment practices liability portion of the policy is primary. And then subsequent to that, on April 19th of 2017, there is another coverage determination letter from Mr. Knox in which he denies coverage altogether. The basis of the denial in that letter is a purported failure to report the November 11th, 2015 letter. Nowhere in Mr. Knox's coverage determination letter does he say that the EPL portion of the policy is not triggered. In fact, he says the opposite, and he states, in the absence of the threshold coverage issues raised above, the suit would be an employment practices claim with respect to Madison Mechanical, OS Corp., Haslam, and Garofalo. And to be clear, those threshold coverage issues that he was raising were the issues of prior knowledge, late notice, and lost history, not that the EPL portion of the policy wasn't triggered. Now, here, again- Well, maybe I'm having a little trouble that Judge Heitens is having, too. But so what, right? I mean, don't we still have to answer the question of whether this is an employment practice wrongful act? I mean, I've been waiting, but what I'm trying to figure out is, is it actually covered or not? I mean, we're not making an estoppel argument, and I understand maybe there's some post-entry of the agreement evidence as to how they interpret it. But the real answer is, does it fall within the provision or does it not, regardless of what they said? They've reserved rights. There's not an estoppel argument. It's got to fall under this wrongful dismissal, discharge, or termination of employment provision or not. And that's what I'm- first, help me understand. Isn't that fundamentally what we're trying to ask? Yes. Okay. Can we maybe go to that question? You're absolutely right, Your Honor. It does fall under that provision. So the insurance- oh, I'm sorry, Your Honor. Well, I don't think the judge said it did fall under that provision. He said the question is. That's what I'm saying. His question is correct that the real determination here is, does it fall under that provision? And the answer to that question is yes. Why? The employment practices part of the policy has specific language in it. The Butchkowski claim triggers that part of the policy because the plain language of the policy itself states that the insurer, quote, shall pay loss on behalf of the insured resulting from an employment practices claim first made against the insured during the policy period or extended reporting period, if applicable, for an employment practices wrongful act. So the two questions there are what is the definition of an employment practices claim and what is a wrongful act? Can we start with the latter question? Sure. The wrongful act is defined under the policy language as involving any wrongful dismissal, discharge, or termination of employment, including constructive dismissal, discharge, or termination, wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of a career opportunity. And you can find that language on page 229 of the joint appendix. The suit that was filed by Mr. Butchkowski and all of the letters that came before that suit squarely fit within these definitions. But again, why? So I'll take them each one at a time. First, the November 11th of 2015 letter was a cease and desist demand. The basis of that letter had everything to do with Mr. Butchkowski's knowledge of the fact that months prior to that letter being issued, he was made aware that a new company was being formed. And he wasn't going to be hired at the new company. He was not going to be a part of the new company. He wasn't going to be employed any longer at Madison Mechanical OS Corp. And he would no longer be a shareholder as well. So that's a wrongful deprivation of a career opportunity. Wait, a wrongful deprivation of a career opportunity because he wasn't hired at a new company? What makes that wrongful? Those are his allegations, Your Honor. He made the argument in the November 11th, 2015 letter to cease and desist with the formation of the new company that he would not be a part of. Totally fair, right? And if this covered, you know, wrongful formations of companies that are not fair, I'm totally with you there. But, like, that's not an employment question, is it? So Mr. Butchkowski was not just a shareholder. He was an employee. And those two things went. An employee at will. Yes, Your Honor. He was an employee at will. But part of, part and parcel to his employment was his status as a shareholder. Mr. Butchkowski testified to the fact that even his compensation was tied to his status as a shareholder. He received a base salary plus a percentage of the profits. They're all inextricably interrelated. Can I maybe just ask a more specific question? So it seems to me that one way of reading these provisions, the key part being the wrongful dismissal, discharge, or termination of employment, is that they're referring to torts, right? When we think about those terms, that those refer to torts. And we know there are quite common employment torts that we see lots of. And the challenge here is because Mr. Butchkowski is an at will employee, and there's no allegation that this is, you know, race or otherwise improperly driven, right? It's not a tort, right? He hadn't been wrongfully discharged in a tort context. Why doesn't that exclude the claim that, listen, by doing it in the manner you did it, you messed up my shareholder rights. It is not included in the tort of wrongful termination. Because, Your Honor, the plain language of the policy here is what controls. And the policy itself doesn't say that that has to be a tort. Right, but we understand words, you know, in their context, right? We think about the term wrongful termination and pause it for a minute. Maybe I'm wrong. That sort of means the tort of wrongful termination. Like that's, when you read it, that is the plain ordinary meaning. I get maybe you think it's not. But if it's not, help me understand why it encompasses something other than the natural meaning of wrongful termination. Well, the case law, Your Honor, says that it's not just the plain ordinary meaning. It's the ordinary meaning that a reasonably prudent lay person would understand. Mr. Butchkowski's complaint has account for declaratory judgment where he not only asks the court to declare that he is still an employee, but he also asks for injunctive relief with respect to his employment. Twin Cities' own. But just to understand practically what that means is he would then be employed by a company that is now defunct. It has no business. It's not doing anything. Yes, but we take the plain language of what his complaint is and the four corners of that complaint on its own. And what the plain language here turns on is Mr. Butchkowski's complaint. And then further back from that, the May 10th demand letter that immediately preceded that complaint, in addition to the November 11th, 2015 letter. I know we're about to start eating into your rebuttal time. I want to ask you about the May demand letter, though, and the language in it that worries me the most. I agree. That's the one that starts talking about his job and being wrongfully fired. But what do I do about the fact that the May 2016 letter says, I write to you in my capacity as a minority shareholder. I think that is the worst fact about that letter for you. So I would like to give you an opportunity to tell me why I should not be troubled by that. Certainly, Your Honor. As I said earlier, Mr. Butchkowski was not just a shareholder. He also was an employee. Oh, no, I know. But he wears two hats. He's an employee and a shareholder. And in that letter, he says, I write to you in my capacity as a shareholder. Why is that not important? I don't think that it's not important. I think that it's not the only factor that's at play here. That letter was a derivative demand in advance of his lawsuit that was both filed in his individual capacity as well as in his capacity as a shareholder. But that complaint and the derivative demand had multiple facets to it. So I don't look just to what he said in his introductory paragraph, but I also look to the substance of the letter itself, wherein he is saying in that letter, you wrongfully terminated me. You terminated me because you wanted to take my shares. You terminated me because you wanted to deprive me of this opportunity with contracting. So the letter itself has to be taken as a whole, not just that first initial paragraph. And I apologize, Your Honors. I see that I'm beyond my time. In conclusion, there's two issues when looking to a motion for summary judgment. Is the dispute genuine and are the facts material? And in this case, we don't even agree on the determination of the basis of the denial itself and whether the portion of the policy, the EPL portion of the policy, was triggered. Those facts will change the outcome of this case, and it is a very fact-intensive analysis. And for these reasons, Your Honor, we respectfully request that this court reverse and remand. Thank you. Thank you very much. Good morning, Your Honors. Good morning. I'm Charlie Limley of Wiley Ryan on behalf of Twin City Fire Insurance Company. You can take the mask off during your argument if you wish to. You need not. Thank you. I got so used to it, I forgot it was there. I don't want to regurgitate what we've written in our briefs. You've obviously read them very carefully, so if there are any questions, I'd be happy to address those. Otherwise, I would just address what we were talking about briefly. Can you start with the idea of whether the complaint, assume everything relates back for a minute, and when I look at the letters all written together in the complaint, help me understand how I interpret those in light of a wrongful dismissal, discharge, or termination? Can you just focus on that? I had a little discussion with your colleague about it. Yes, Your Honor. The fact is Mr. Bukowski had many, many opportunities to say that I was wrongfully discharged. I was wrongfully terminated. My life as an employee was wrongfully ended. He had the November 11, 2015 letter, didn't mention employment. He hadn't been terminated at that point. Even if you look at the May complaint, the May demand letter, he had 14 counts in his complaint, 14 opportunities to say this is a wrongful discharge case. He never did. I asked him about that at his deposition. He said, I was an at-will employee. I couldn't allege wrongful termination. What he alleged was that they wrongfully said they were terminating him for a cause to trigger his obligation to sell his shares in his capacity as a shareholder. He said over and over again, and again in his deposition, that he was acting in his capacity as a shareholder. He was trying to recover the value of the business that had been taken from him. And if you look at the settlement that they turned into, that is in fact the basis for the calculation of the settlement that was ultimately paid to Mr. Bukowski. Do I understand the term wrongful termination? I'll use to include all of those. There seem to be two different ways of thinking about it. One, which is I think as you're saying, he didn't bring one of these 14 claims, is sort of a legalistic way of understanding that term. We understand it as lawyers. When I think of wrongful termination, I have a certain image in mind and it doesn't look like this. Your colleague says, no, no, no, no, that's too lawyerly of you. Instead, we look at wrongful termination and sort of its much more ordinary use. And somebody would say that if you could be fired, but you were fired in the wrong manner, that's a wrongful firing. And that's the claim here, right, is that you could fire me if you wanted to, but you can't fire me in this manner, right, that being for cause. And so that looks like in sort of a very, you know, layman's use of the phrase, that looks like a termination that was done for the wrong reason or the wrong manner, and that sort of looks like a wrongful termination. I believe that the more appropriate reading of the policy is to say when it is an employment-related tort, seeking some sort of employment-related relief. I agree, and if it said that, that would be great, but that's not actually what it says, right? I mean, what it says is, you know, a wrongful termination. And what she says is, yes, this was a termination, all right, we all agree with that. And was it wrongful? Yes, because it was done for cause instead of, you know, for no cause. I would disagree with that. He didn't say he was wrongfully terminated. He said they had the right to terminate me any time they want to, which they did as a matter of law. But just not for cause. He said they gave the wrong reason in order to force him to sell his shares in his capacity. So that's another way that I think you could imagine this being a wrongful termination claim. They said, although I'm not sure this helps you. The real problem to me, it seems that in this case, is that his employment and his shareholder status are inextricably intertwined. And what this case is asking us to do is, how do you pull apart two things that are inextricably intertwined? Because as I understand, really the heart of his complaint to me seems, you fired me for an improper purpose, which was to squeeze me out of this company. Now, the way that's good for you is that makes his claim really sound like an oppression of a minority shareholder claim, which is apparently not covered by this policy. But you can think of it that what was wrongful about it is that you did it. Sure, you can fire me for any reason or no reason. But you did it and you characterized it this way to accomplish something that was itself wrongful, which is oppressing a minority shareholder. So what's your response to that? Well, that doesn't make it a wrongful termination. That makes it a rightful termination that was used in a calculated manner to squeeze someone out of the business. The whole case is about him being squeezed out of the business. That's all he ever complained about. All of his discussion of employment is just saying you told me you were dismissing me for cause because you wanted to force me to sell my shares into the shareholder agreement. He never said I was wrongfully terminated. He said you had every right to terminate me at any time you wanted to, for cause or for no cause. But it was not – the point of they said it was for cause was to force him to sell his shares. What do I do about the fact that the settlement agreement sure seems to characterize this as partly about a wrongful termination? Well, the entire settlement was calculated by – were in connection with coverage lawyers to get to that point. In fact, they even had him sign a declaration saying that his shares in the company had been reduced as of April of 2016, which I asked him at deposition, why did you sign that? He said, well, they told me to sign that. I understand that happened in September. So your view that what we should say about that is that's a post hoc document that doesn't really bear on the – we have to write an opinion that says something. What would you propose that we say about the settlement agreement saying that it's a wrongful termination? Well, I would say that it was – it just is completely inconsistent with the facts. And it was a post hoc documentation that was calculated to trigger coverage under insurance policy. And the main focus there was – Why wouldn't that be like a disputed fact, right? So your story plausibly says, listen, like they basically signed false documents in order to try to create coverage after the fact when they had messed up on the front end or hadn't brought the right claims. All right. That seems totally plausible to me. But it doesn't seem like undisputed, right, because they sort of said the opposite, right, that it was a termination claim. But the better reason why it doesn't matter is because coverage has to be determined at the time the claim was first made, which in this case is November 2015. So even the complaint doesn't come in. But their theory, if this thing happened, if whatever that's covered happened, if they got a claim that was covered in 2016, then it's not covered here. The court has already found that there was no coverage under the 2016 policy at all. But help me understand. Let me back up for a second. Assume for a minute that, like, I think the relation back works, that sort of where you have that there shall be deemed a single claim for all purposes, right? So I think all the May stuff goes back to the November 15. That relation back provision means that I consider all of that at the time of November, right? But not the settlement documents. That's not a claim document. They were not demanding anything in the settlement. They were just saying, here's what we're doing here. They were just, as a post hoc, just sort of articulation of their rationale for why they were doing what they were doing. That's what I'm trying to get at. So why is that? Because what the provision says is all claims based upon or arising in any way from the same wrongful act shall be deemed a single claim. And so maybe I read the settlement agreement as saying, yeah, we're settling a claim that wasn't actually in the complaint, but we're now saying it was an employment case. And so based on this, it all relates back. But if they're saying we're settling a claim that wasn't there, that doesn't make it a claim. The claim has to be a written demand for monetary or non-monetary relief or a complaint filed in court. The settlement document wasn't demanding anything. It was sort of a post hoc characterization of what they had done before, and it was an improper characterization. It was just wrong. The documents at most you have to know. If I read hypothetically, if I read the settlement agreement as starting with a claim and then resolving it, that that would, under the relation back provision, do you think that still relates back to the November 15? No, Your Honor, because it wouldn't be a claim. If they demanded something new, then it might be a claim. But they weren't demanding anything new. They were saying, here's what we demanded a long time ago. But in order to determine coverage, you have to go back to the time the claim was first made and say, what was the claim really? And even if you do include the May 2016 complaint, because that was a demand, and it does relate back to November 2015, the settlement document is not a claim. The claim is defined in the policy, and it doesn't include a settlement document that articulates why we're settling what we just settled. And if you look at what they actually paid in the settlement, it's pure restitution. It was based solely on the amount that they had deprived, the value of what they had taken from them wrongfully. I mean, there are multiple other reasons why there's no coverage. Even if you find it's an EPL claim, the court already found that the prior knowledge and lost history exclusions preclude coverage under 2016, and for the same reason they don't include coverage under 2015. But that argument doesn't work, because the 2016 policy is a different entity. It's the LLC. But the 2015 application is incorporated into both policies, both 2015 and 2016. May I say that again? The application was, they applied in December 2015, just a couple of weeks after the November demand letter. And it was signed by the LLC? Right. By the new entity? It said any applicant or any individual person who's going to be covered under this policy. Does anybody have any awareness of any facts? Yeah, but they didn't. Okay. All right. Fine. And by the way, it also says if there's any claims or demands that already exist, they're not covered regardless. Who knows about it? They're not covered for the LLC. No, Your Honor. It is not limited to the LLC. It says flatly any applicant or any person who's covered under this policy. Right. And was the old company covered? Why do we think the old company was covered by the new policy, which was issued only to the LLC? It was not, no, Your Honor. It was not. They amended the 2015 policy. They did not issue a new policy. They had requested a new policy, but they amended the policy to add the new LLC as an additional insurer. The policy still, the name insurance under the policy still remained the two companies and the individual appellants here were also insured under the policy. All they did was add this new LLC who they knew was just about to be sued, and it was the lead defendant in the lawsuit that they filed. They were trying to get insurance coverage that would protect them when Mr. Buxikowsky got around to filing his lawsuit, and they did, and the only reason they got that is because they didn't tell anyone that they already had a demand from Mr. Buxikowsky. Had they answered those questions truthfully, there is absolutely no question that the policy, even if they did amend the policy to add the LLC, that it would have been amended in a way that excluded coverage for the existing claim, the claim that already existed. But that would only exclude it from the 2016 policy, right? Your Honor, the 2015 policy, this amendment happened in December of 2000. But the previous policy, the one that was before that, that wouldn't exclude making a statement on that policy. The LLC statement there wouldn't have excluded a claim that was made in November of 2015, for example. Wouldn't exclude a claim that was made in November 2015. Okay, but as of November 2015, there was no reference to any employment tort. I understand that argument, but what it doesn't do is it doesn't affect the question. The question is whether the November 2015 claim, as related back, including the May 16 issues that are raised, falls in the provision, not about the alleged misrepresentation in the December 15 agreement. As just a timeline, the 2015 policy goes through May of 2016. December of 2015, they file this application, and that amends the 2015 policy going forward. It says if any claim exists as of December 29, 2015, and you don't tell us about that, we don't deal with it right now, there will be no coverage for any such claim going forward. May 2016, they now want to make that a claim. Going forward. Okay, I understand your argument on that. Thank you. And there's also, there's no fortuity here. Nothing fortuitous happened. There was no accident, no natural disaster that befell the appellants. They made a cold, calculated decision and implemented a cold, calculated plan to steal this man's share of the business, Mr. Bukshikowsky's share of the business. He didn't let them get away with it. They ultimately ended up paying him restitution for what they had taken from him. Fundamental principles of insurance law, before we even get to the policy. Fundamental insurance principles like fortuity, moral hazard, all counsel against providing coverage here, or you would encourage people, this is the thing they've been talking about since the old days in the tea houses in London, the 18th century. Moral hazard. You don't want to encourage people to engage in risky behavior or untoward behavior, do things like steal business from their business colleagues, knowing that they can just get insurance if they get caught. And that's exactly what happened here, Your Honor. For all those reasons and the reasons we've articulated in our brief, we would respectfully ask the Court to affirm the district court's ruling. I'd be happy to answer any more questions if there are any. Thank you very much. Thank you. Thank you, Your Honors. May it please the Court. Gary Jones for the appellants. I take issue with Mr. Limley, my colleague, on the last part that he addressed. This is an EPL claim that was presented. It's not a conspiracy. It's not a moral issue. I think the keys are that, number one, under the provisions that His Honor Judge Richardson was mentioning, the policy provides that all claims based or rising out of in any way related to the same wrongful act are treated as a single claim. And here you've got all these intertwined facts. And Judge Gallagher made a decision based upon a summary judgment motion that there were no disputed material facts. There are. There are disputed material facts with regard to the late notice issue. There are numerous facts with regard to the issue of whether or not this claim has the potentiality of coverage under the provisions of the EPL portion of the policy. And to get to the heart of the matter, if you look to the expert, who I believe is Michael Knox, he says in his letter, and we're not claiming no backs, but he says based upon what he had in front of him, which included the complaint that was filed in late May, he says with respect to the damages and other relief, plaintiff demands a declaratory judgment from the court that he remain an employee and shareholder of Madison Mechanical. Along with injunctive relief, ordering defendant to take all actions necessary to recognize his continued employment and ownership of shares. Further, in the same coverage letter, Mr. Knox says that because Bichkowski does allege employment-related wrongful acts against entity defendants, that they would provide a defense under a reservation of rights. They even say that because the EPL part and the DNO part are in part triggered under the policy, the loss would first be covered under the EPL part. And under the EPL part, this suit is an employment practices claim. But don't, I mean, I understand why you want to read the letter, but don't we have to decide that question? We don't give deference. It's like an agency question. They're not getting any deference for us. That letter is like not. Absolutely. It is your Honor's decision that needs to be made de novo. But my point is that even the insurance professional that was dealing with this claim at the time thought that the complaint, along with the prior letter from May of 16, stated a EPL coverage part, that there was a potentiality of coverage. And the second thing, Your Honor, when I went up. Let me ask you what I think is for me the, like, to the extent there was anything wrongful about his termination, it seems that it was wrongful because they were doing it to try to force him out of the company. Because if they weren't trying to do that and he brought a claim under Maryland law, it seems obvious to me he would have lost instantaneously. And so do you have any authority for the proposition that under Maryland law, firing an Atwell employee because you are trying to squeeze him out of a business is a wrongful termination under Maryland law? I believe, no, Your Honor. I think there's not a case directly on point, but I think under the language of the policy, it fits squarely under the definition of employment practices wrongful act. And I suppose maybe the answer to what I just said is, well, that indicates that if he filed such a suit, he would lose on a 12B6. But that doesn't mean it isn't a wrongful termination claim. It's a wrongful termination claim that's illegally meritless under Maryland law. And it could be either way, but we would still be entitled to that. Well, I'm not sure it can be either way. What's the authority that it can be either way and that it's not just flat out wrong? Your Honor, I agree with that part. But if he states a claim, we have a right, tie goes to us. Knox said to me we're providing a defense. And also we reported that letter to Mr. Franey. So you're going back to what seemed to be an estoppel argument, but you didn't. That isn't in your brief. Is that what we talked about first time around? Yes. With your colleague? Yeah. So going back to that letter doesn't do much for you, I don't think. Fair enough. But I do believe that under this set of circumstances where you have the potentiality of coverage under the policy, at a minimum the insurance carrier needs to provide a defense. They have not done that. It leaves the insured in a under this scenario under Judge Gallagher's opinion. So this goes back to the earlier question, I think. Tell me where the argument is, just so that I'm sure I'm following it, where you've preserved that maybe they don't have a duty to indemnify, but they do have a duty to defend. I think we've preserved both. I think we've argued clearly in the papers that they have a duty to defend. And I also believe with certainty that we argued that they had a duty to indemnify. I believe that the duty to defend under Maryland law is much, much broader. If there's a potentiality that this could be covered and indemnified, they have to provide a duty of defense, which is what they said in October of 16 that they were going to do. So your alternative relief is for us to affirm on the duty to indemnify but reverse on the duty to defend? Absolutely. Yes. Yes. Thank you, Your Honors. Thank you. We appreciate your arguments. We usually, as you know, may or may not know, we come down and shake hands afterwards. But we're not going to be able to do that today. But we do very much appreciate your arguments.  Thank you, Your Honors.
judges: Diana Gribbon Motz, Julius N. Richardson, Toby J. Heytens